Good morning, Your Honors. And may it please the court, Jessica Oliva with Federal Defenders on behalf of the appellant. I'd like to reserve two minutes for rebuttal, and I'll keep track of my time. Thank you. This court should reverse for two reasons. First, because in reaching its verdict, the district court relied on appellant's physical appearance, which was extrinsic evidence never introduced at trial. And second, because even if it could rely on his appearance, the court's mere and sole comparison to the surveillance footage is not enough to support each bank robbery count beyond a reasonable doubt. Counsel, can I ask you a question on that last point to start with? It's true that the district court seems to say, I'm only going to base my identity decision on a comparison of the person sitting in the courtroom to the surveillance photos. But it doesn't seem like on appellate review for a substantial evidence challenge that we are limited to only doing that comparison and that we can consider the larger record. Do you disagree with that? I do not disagree, Your Honor. This court can consider the larger record, but this court should pay deference or defer strongly to the district court's factual finding that the additional evidence, the historical cell site data, the ride sharing data, there wasn't sufficient evidence in the record or presented at trial to make that evidence relevant. Why should we defer? Because it's a district court's factual findings, Your Honor. And so the court should defer. Do we treat the finding that it's the same person as a factual finding, which we treat by a clear air standard? No, Your Honor. But in this case, the district court... Why are the standards different for the different kinds of evidence? Why should we say, defer to the evidence that you want us to disregard, but not defer to the evidence that you want us to disregard? What's the basis for that? Well, Your Honor, we're not asking the court to disregard the visual comparisons, the surveillance footage, for example. What we're asking the court is to pay strong deference to the court's factual findings or findings that there simply wasn't enough in the record to link the cell phone data evidence. But why do we defer to that and not defer to the trial judge's ability to observe sitting in the courtroom for a couple of days and make the comparison that we can't make because we're not sitting in the courtroom for a couple of days? So why shouldn't we defer to that? Because in that case, Your Honor, the district court improperly took into account information that wasn't presented as evidence, which was the appellant's physical appearance. Well, that's your first argument. Correct, Your Honor. But that's something a little different. We can get to that. But I'm still trying to pin down the standard, and I don't hear a reason why the standards are different for the two different kinds of evidence. Well, it's a de novo review on a sufficiency, insufficiency of the evidence claim. And so, of course, the court can review de novo. But you've told us no. You've told us it's not de novo. We should give deference to the trial court's decision that the other evidence wasn't substantial enough. So that's what's inconsistent about this. And I'd like to clarify my position, then. It certainly is a de novo review. This court can take everything into account. However, I think it is important that the district court, having viewed all of the evidence, said during its sort of findings of fact that there simply wasn't enough that the government did to connect the rideshare history evidence, the historical sell-side evidence, with the person sitting in the courtroom. The government simply didn't introduce any evidence that the person sitting in the courtroom's name was the same name that was shared with the person who held those self-identified evidence. The government argues that the defense counsel introduced him as Mr. Hassan, and therefore that name was properly before the district judge. That's their position, Your Honor. We think that what the trial counsel, and it was myself, did was we made our appearance on the record. We introduced ourselves as representing the appellant, but we did not introduce the appellant to the trier of fact. At that point, we made our appearance on the record to the district court in the district court's capacity as the court presiding over the trial, not in the district court's capacity as a trier of fact. I think that is substantially different than what counsel did in Alexander, for example. In that case, defense counsel introduced defendant Gary Alexander to the jury. In the other cases that the government relies on, there are representations made to the jury. Well, since it was a bench trial, I'm having trouble finding that distinction. It was a bench trial, Your Honor, but at the end of the day, due process and the Sixth Amendment guarantee of a fair trial makes no distinction between whether the trier of fact is a district court or whether the trier of fact is a jury. At the end of the day, the guarantee requires... You're telling us there is a distinction because we're supposed to disregard your introduction of the defendant by name as compared to an introduction to a jury. You're treating them differently, and now you're telling us we shouldn't treat them differently. There's a distinction when at the... There's no distinction when the guarantee to a fair trial requires that a verdict be based on evidence actually introduced at trial. My appearance on the record before trial even began, and I think it is quite clear that trial hadn't begun at that point. In fact, the government asked to lay a record about an entirely separate matter before they even gave their opening statements. I think the government attorney said, literally, I would like to address the court before beginning. And so my appearance on the record was not at trial. It is very different than when Alexander's attorney introduced Alexander to the jury. It's very different than in, I believe, its masters when they make the representation, defense counsel makes a representation to the jury about the identity. I think it's different, but why should we treat it as different? Why is that a distinction that should make a difference? I think it goes back to... I mean, you never said this isn't the guy whose name's on the indictment. No, Your Honor, but the indictment, again, is not evidence or cannot be used as proof of guilt at trial. I think the two issues are related, but I think it goes back to the first point, that at the end of the day, the Sixth Amendment guarantee of a fair trial requires that a defendant be judged based on the evidence introduced at trial. And here, the government never bothered to introduce anything about the person sitting in the courtroom. They had no witness identify him. They had no information or testimony about that person's name. They didn't even bother to link that the person who was arrested for these offenses was, in fact, the person sitting at counsel table. In Shuler, for example, well, I'll go back to Navarro-Garcia. This court has defined extrinsic evidence as information obtained through either out-of-court experiments or otherwise. But that definition isn't just limited to out-of-court experiments. And I think Shuler and Vasquez-Perez and Brincone reveal that for us. In Shuler, for example... I'm old, so maybe you don't, but O.J. Simpson trial, the dramatic moment that caught the whole country and certainly caught the jury was putting a glove on Simpson's hand. That's what he was asked to observe. There wasn't testimony that it didn't fit, but Johnny Cochran's closing argument, if it doesn't fit, you must acquit, is hard to forget. Now, why is that considered extrinsic, out-of-court, if it all happens in the courtroom? I wouldn't say that that was considered extrinsic. That actually had, and I'm familiar with the moment, Your Honor. In that case, O.J. Simpson was, or there was leave from the court for O.J. Simpson to try on the glove. The prosecutor asked the court that he, it was demonstrative evidence, we would say, but that it was in front of the jury. And why wasn't your client's face demonstrative evidence that the district judge looked at for several hours? The crucial point that's missing is that the government never took that step. The government never asked the court leave to observe... ...introduction into evidence of the face of the defendant sitting in front of you. Have you ever seen that? I've seen witness identification. I certainly think... I'm not asking about that. I mean, people observe what happens in the courtroom, and I've never seen anybody ask the district judge, particularly in a bench trial, please accept as evidence the face of the defendant who's sitting in front of you. I do think this is a unique case when the government failed to prove any other identification evidence. There was no witness identification that would have supplemented the need to ask someone to stand up. There was no law enforcement officer testifying that the person they arrested was in fact the person sitting before them being judged. And so I think this is a rather unique case. But at the end of the day, the Constitution requires that if you're going to judge someone, convict them, put on a case, then they must be convicted based on the evidence introduced at trial. And that simply wasn't done here. I recognize I have a minute left. Thank you, your honors. We'll hear from the governor. May it please the court, Daniel Zip on behalf of the United States. Your honor, the district court in this case did not violate Mr. Hassan's Sixth Amendment rights by considering his in-court appearance and comparing that to the video surveillance evidence. This does not raise the same concerns as this court has recognized in the extrinsic evidence cases, as there was nothing extrinsic about the defendant's face in the courtroom. None of the concerns specifically in the Sixth Amendment about the right to confrontation or compulsory process or cross-examination or the right to counsel are implicated by the court simply looking at the defendant's face as he sat in the courtroom over the course of trial. I have to say that if I was limited, as the district court indicated she was limited to just looking at the defendant in the courtroom and comparing his face to the surveillance photos and videos, I don't know if I could, I don't think I'd get there. So I'm curious what you think in the record would tie that up beyond the surveillance. Sure. I guess two responses. One, on sufficiency of review, it's not whether any individual court would come to that conclusion. Well, that's an interesting question, sufficiency of the review, sufficiency of the evidence on that particular issue, because as Judge Clifton alluded to, how would we even ever assess that, because we have half of the equation there's no way for us to assess, because we weren't sitting there, we don't know what he looked like in the courtroom, which is another reason why I think I would have a problem if the only evidence I could look at is a comparison of him in the room to the surveillance photos, I'm only having half of that equation. I have no idea how to assess that. So that's why I'm asking you, what else in the record can I piece together to show that the identification that the district court made is sufficient? Sure. Well, in addition to the video surveillance evidence, there was significant corroborating evidence introduced. There was cell phone records putting the defendant's name, Mr. Mohamed, at this location at Pulitzer Place where he was picked up for the first robbery. There was cell phone data showing him traveling from that location to the first bank where he appeared on video. There was Uber data from that first pickup, also under the name of Mr. Hassan, also showing the same path to the bank and back. And then there was Lyft data from the third robbery, also in his full name, also showing the direct path to and from the robbery. In addition, the fact remains, even if this court were not to look at the defendant in court, but just comparing the four individual robbery videos, they're very clear that it's the same person that appears in each one. At least the second one, I think, has the clearest image of him, where he doesn't have a hat and most of his face is exposed. So if that's enough to make the comparison, then it's clear that all four of them are all the same. And the cell site data from a phone registered in his name at his address shows that same phone going to each of the four robberies. So it's not entirely clear to us why the district court disregarded all of that evidence at trial, but as Your Honor has noted, you can consider it on sufficiency review, and that in combination with the videos, we believe is sufficient for a rational fact finder to find all the elements. In addition, if you look at the briefs, admittedly, if you look just at those still photographs and compare them to the image of the defendant in the PSR, some of them are grainy and it's hard to tell, but the court watched long sections of video, 15 minutes or more, from each of these robberies and sat through the trial over the course of two days with the defendant in court, able to observe the defendant over the course of hours. So I think that comparison between video evidence and the live appearance of the defendant is much more powerful than just sort of trying to compare four images in our briefs. Is the question raised as to whether you talk about the link to the person with the defendant's name, how was it established that, in fact, the person sitting next to counsel in the chair, usually reserved for the defendant, was, in fact, the person with that name? Right. And the evidence is weaker on that point, admittedly. There's sort of two questions. Is the person that was indicted, did we indict the wrong person? Is that actually someone named Mr. Muhammad Hussein? And then the broader question is, did that person commit each of the four robberies? On the first point, this court has held multiple times that, on review, the court can consider what the defense counsel does. Introducing their client as Mr. Hassan is evidence on that first question. Did we indict the wrong person? The fact that the defense counsel introduced him as Mr. Hassan, the fact that no one at any point in trial said we've got the wrong guy, the point that over the year of custody or the months leading up to this trial, there was never any challenge to him being indicted wrongfully or that he wasn't the person charged in the indictment. On that question, this court can consider a sort of broader range of evidence as to whether his name was, in fact, Mr. Muhammad Hussein, Hassan, sorry. The facts here are somewhat unique. I mean, your colleague acknowledged as such. I had a law clerk work diligently trying to find a reported case like this. What's the closest case you can point to that fits the factual situation here? I think on the Sixth Amendment point, it would be the Domina case where this court held that it was not improper for a district court to make the defendant wear a mask and have a witness identify the defendant in the courtroom, and then the court held, and the jury could also consider the defendant's appearance in that mask for purposes of comparing him to the surveillance evidence in that case. That's very similar to what happened here. The defendant was never asked to stand up or sort of formally present himself to the district court, but particularly since this is a bench trial, it would make little sense for anyone to have gone through that additional exercise. Well, the cases that I looked at that were somewhat similar, including the one you just described, the comparison that the fact finder was allowed to make or acknowledged that they could make in the courtroom was in addition to other evidence of identification. So the unique thing about this case is that there isn't any witness saying that's the guy or some other specific identification evidence. That's true, but we don't believe that that's relevant to the Sixth Amendment analysis. It doesn't become a Sixth Amendment violation or not a Sixth Amendment violation just because some other witness has identified him earlier in the proceeding. The question is, does the court looking at the defendant in trial implicate any of the concerns in the Sixth Amendment or the right to confrontation or the right to counsel? All those aspects of the other extrinsic cases where this court has held, you know, relying on a court file that wasn't supposed to be in evidence or jurors' understanding of a defendant's reputation for violence, those are the type of things that would implicate the need for confrontation or the need for counsel. None of that is implicated here when all we're talking about is the defendant's appearance, and this court has made clear in the Fifth Amendment context, you don't have a right to not appear in court to protect your identity under the Fifth Amendment. So for all those reasons, we believe that the district court did not violate the Sixth Amendment and viewed in the totality the evidence here was more than sufficient for a rational finder of fact to find all of the elements of the offense. Does the court have any questions? Thank you for your argument. Do you have a minute for rebuttal? Thank you, Your Honor. The question isn't whether it would make little sense to ask the appellant to stand in court so that he can be, his appearance can be introduced into record. It's whether it was constitutionally required, and it was. This court in Shuler, for example, held that it was improper for the prosecutor to have commented on the defendant's demeanor, his laughter during a witness's testimony, because at the end of the day, it wasn't evidence developed or adduced at trial. I don't see a very big difference between a defendant's laughter during witness testimony and an appellant's appearance. At the end of the day, it simply was not introduced into evidence or developed at trial. There are constitutional concerns that arose from this. If, for example, the government had elicited testimony from a teller identifying the appellant in the courtroom, that would have given us an opportunity to cross-examine the identification. The witnesses or the teller's descriptions of the robbers vastly differ from one another. And so we were deprived from the ability to undermine those identifications or at the very least point out the differences between the person in the surveillance footages and the person sitting at defense counsel table. But because the government never bothered, chose to never introduce into evidence his appearance or have a witness identify him or have any evidence that pointed to the fact that the person who was arrested was a person sitting in the courtroom, that did undermine our ability to put on a defense, cross-examine witnesses, and undermine their identification. You're over time. Excuse me. Were you aware that the district court viewed the videos? As we sat there, as the evidence was introduced. Well, wouldn't that seem to open the door if you wanted to argue that there wasn't a match to make that argument directly to the district court? No, your honor, because at the end of the day, it's a sixth amendment guarantee to be judged based on the evidence introduced at trial. And so only in closing argument, when the government asked the court to take a look at the appellant, were we then on notice that that is what it intended to rely on to prove its case. In fact, that was the only thing it intended to rely on to prove its case. So the district court pointed to the video evidence as a silent witness, that it was a witness to his identity. Correct, and we objected during closing arguments, your honor. Okay, thank you. Thank you. We thank both sides for the arguments. The case United States v. Hassan is submitted.
judges: CLIFTON, IKUTA, FORREST